IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 25, 2001 Session

## STATE OF TENNESSEE, Respondent/Appellee v. EDWARD ALAN SCARBROUGH, ALIAS, Defendant; INTERNATIONAL FIDELITY INSURANCE COMPANY, Petitioner/Appellant

Appeal from the Criminal Court for Knox County
Nos. 66772, 68668, and 68669      Mary Beth Leibowitz, Judge

October 17, 2001

No. E2001-00304-CCA-R3-CD

The defendant, Edward Alan Scarbrough, failed to appear for a scheduled court date on September 21, 1999.  Conditional forfeiture was taken on bail bonds in the total amount of $125,000.00.  The surety for these bail bonds was International Fidelity Insurance Company, which was obligated through its agent, Gary's Bail Bonds, Inc.  Defendant was not returned to custody until after the time period for final forfeiture had expired.  International Fidelity Insurance Company filed a timely petition to be granted full exoneration.  The trial court, after a hearing, granted partial exoneration and ordered International Fidelity Insurance Company to pay $55,000.00.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**.

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Jeff Whitt, Knoxville, Tennessee, for the Defendant, Edward Alan Scarbrough; Linda J. Hamilton Mowles and John King, Knoxville, Tennessee, for the petitioner/appellant, International Fidelity Insurance Company.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Randall E. Nichols, District Attorney General; and William Crabtree, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The appellant, International Fidelity Insurance Company ("International Fidelity") was surety on three bail bonds for the defendant, Edward Alan Scarbrough, in the total amount of $125,000.00.

The bonds were made on May 26, 1999. International Fidelity's agent, Gary Slusher, doing business as Gary's Bail Bonds, Inc., wrote the surety appearance bonds for Defendant. Defendant failed to appear for a scheduled court date on September 21, 1999 and absconded. Conditional forfeiture of the bonds was taken on this date and *scire facias* was issued. The parties do not dispute that Gary Slusher, the bail bondsmen, received notice of the conditional forfeiture and *scire facias*.

According to the testimony of Jerry Watson, a vice-president of International Fidelity, Gary Slusher was terminated as an agent of International Fidelity sometime in "March or April" of 2000. Pursuant to Tennessee Code Annotated section 40-11-139, the 180-day time period which must pass before final forfeiture could be taken expired in March 2000. Gary's Bail Bonds, Inc. requested a 90-day extension of time in which to return Defendant prior to the taking of a final forfeiture. The trial court granted it a 30-day extension. In an order entered April 19, 2000, the trial court denied a subsequent request for extension of time to produce Defendant without final forfeiture being taken. Jerry Watson testified that his company did not receive notice of the forfeiture until approximately April 28, 2000, at which time it promptly began efforts to regain custody of Defendant. Defendant was turned over to the Knox County authorities on May 22, 2000. International Fidelity timely filed a petition for full exoneration from the final forfeiture.

Following an evidentiary hearing, the trial court granted partial exoneration in the amount of $70,000.00 and ordered International Fidelity to pay $55,000.00. International Fidelity appeals this decision of the trial court. The sole issue for review is whether the trial court abused its discretion by not granting full exoneration to International Fidelity.

The substance of applicable law which addresses this issue was succinctly stated by a panel of this Court in State v. Shredeh, 909 S.W.2d 833 (Tenn. Crim. App. 1995), which held as follows:

> The forfeiture of bail is governed by statute. Tenn. Code Ann. §§ 40-11-201 through -215. When the defendant fails to appear as required, the issuance of scire facias requires sureties to give reasons why a forfeiture of bail should not become final. Tenn. Code Ann. § 40-11-202. Trial courts have the discretion to relieve bail bondsmen or other sureties from the liability of a bail and are authorized to hold hearings to determine whether the forfeiture should be excused, lessened, or absolutely remitted. Tenn. Code Ann. § 40-11-204. The discretion has been described as broad and comprehensive, empowering trial courts to make determinations "in accordance with [its] conception of justice and right." Black v. State, 154 Tenn. 88, 92, 290 S.W. 20, 21 (1927).

Shredeh, 909 S.W.2d at 835.

It is undisputed that, at some point after May 22, 1999, when Slusher wrote the bonds binding International Fidelity as surety, Slusher began writing bonds for a competing company. International Fidelity terminated its relationship with Slusher in March or April of 2000. International Fidelity, in essence, argues that once it had actual knowledge of the forfeiture, it took

extremely prompt action to return Defendant to the custody of the Knox County authorities. International Fidelity argues that denying it full exoneration in this case would defeat the purposes and policies of giving sureties a financial interest in returning custody of those for whom bond has been made. It is true, as noted by International Fidelity, that the trial court stated in its findings that International Fidelity was "expeditious" and a "model of prompt action for purpose of returning the defendant to the court." The trial court also found that International Fidelity had failed to exercise supervisory authority over its bond documents, and its agent, Gary Slusher, in the Scarbrough bonds.

This finding by the trial court was clearly supported by the evidence presented at the hearing. For instance, Mr. Watson, the vice-president of International Fidelity, gave the following testimony:

Q:      Now, Mr. Watson, of course, International Fidelity writes in, ah, each local area through agents, ah, authorized to, ah, ah, if you will, execute the bonding obligations on behalf of International Fidelity, ah, correct?

A:      Yes. We engage with, ah, with various retail sellers of bail bonds, locally, across the country, and *we appoint those individuals*, men and women, ah, *as our attorneys, in fact*, ah, and then we file with the county clerks with each of those jurisdictions a qualifying power of attorney, which authorizes that particular retail seller of bails to execute his bonds on our behalf, and when he executes that bond properly, *attaching to it an execution power of attorney, it's just as efficacious as though the president of the company signs the bond, and that's, and that's the way the business operates*.

* * *

Q.      Well, what supervisory authority did you all exert over your agents?

A.      Well, we don't exert supervisory authority. They're, they are, independent contractors. They're local retail bail bond writers, and General as between them and us, we have a contract with them, and the reality between them and us is, that these are their bonds that they are writing on our financial credits, and we serve more in the capacity as a reinsurer with them. As between us and your state. We're definitely on the bond.

Q.      How about between, how do you determine in fact they made a bond?

A.      We, we don't know when they make a bond.

Q.      So, you –

A. The only way – excuse me – the only way we would know when they make a bond is when they adhere to our underwriting instructions to them, and they contact us prior to writing a bond above their underwriting limitation.

Otherwise, they select their customer. They take the collateral. They underwrite the bond. And they make the decision on whether or not to get the defendant out of custody.

(Emphasis added.)

In its order, the trial court found that International Fidelity was entitled to some exoneration for the efforts that it had made in the return of Defendant, but that full exoneration was not appropriate because of International Fidelity's failure to properly supervise its agent or maintain control over its bond documents. After a careful review of the record, we conclude that the trial court did not abuse its discretion in declining to grant full exoneration to the Appellant, International Fidelity.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE